2008 BNH 014
_____

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 07-10996-MWV |
| | Chapter 7 |
| Alfred Marcelle, | |
|     Debtor | |
| | |
| Phoebe Morse, United States Trustee, | |
|     Plaintiff | |
| | |
| v. | Adv. No. 07-1197-MWV |
| | |
| Alfred Marcelle, | |
|     Defendant | |

*Geraldine Karonis, Esq.*
OFFICE OF THE UNITED STATES TRUSTEE
*Attorney for Plaintiff*

*Alfred Marcelle*
PRO SE

## MEMORANDUM OPINION

The Court has before it the complaint of the United States Trustee (the "Plaintiff") to deny the debtor, Alfred Marcelle (the "Defendant"), a chapter 7 discharge under 11 U.S.C. § 727(a) or alternatively dismiss his bankruptcy case under 11 U.S.C. § 707(b)(3).[1] The Defendant filed his answer, and the Court held a two-day trial on May 21 and 28, 2008, at the close of which it took the matter under advisement.

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

On May 14, 2007, the Defendant filed for protection under chapter 7 of the Bankruptcy Code.  This bankruptcy case is the Defendant's second filing.  He previously filed a chapter 7 petition jointly with his spouse and received a discharge in 1989.

According to the Defendant's bankruptcy schedules, his assets total $69,845 and his liabilities total $565,475.  The Defendant's liabilities are primarily consumer debts, and $502,915 of his total debt represents unsecured debt.  The Defendant does not own real property and his significant assets are a 2000 MR2 Toyota Spyder (the "Toyota Spyder") and a 2004 Toyota Tacoma.  He also owned a 2006 Mercedes SLK convertible on the petition date, but it was repossessed during the bankruptcy case.  He resides with his spouse in Windham, New Hampshire, in a home valued over $550,000 that is owned by the Catherine S. Marcelle Living Trust.  The Defendant is a life tenant, his spouse is the trustee, and his children are the beneficiaries of the trust.  The Defendant's occupation is a residential real estate appraiser.

In June 2007, the Plaintiff requested various financial records from the Defendant.  The Defendant produced a joint 2006 tax return, his bank statements from January 2006 through May 2007, his spouse's bank statements from January 2006 to January 2007, several credit card statements from the year prior to the petition date, and a Quicken ledger for his appraisal business for the six-month Current Monthly Income period.  Subsequently, the Plaintiff requested additional tax returns and credit card statements from 2004 through 2006.  The Defendant produced the tax returns but did not produce the

credit card statements.  In August 2007, the Plaintiff made a request to the Defendant to sign release forms so that she could obtain the statements from the credit card companies, and the Defendant refused.  On September 21, 2007, the Plaintiff commenced this adversary proceeding.

## DISCUSSION

The Plaintiff asserts five counts in her complaint.  Counts I through IV seek an order denying discharge under 11 U.S.C. § 727(a), and Count V seeks an alternative order dismissing the case for bad faith or abuse under 11 U.S.C. § 707(b)(3).  The Court begins its analysis with the Plaintiff's nondischargeability argument under section 727(a).

"Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's fresh start policy."  Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 66 (1st Cir. 2004) (internal quotations omitted).  The statutory right to a discharge is ordinarily "construed liberally in favor of the debtor[.]"  Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997) (internal quotations omitted).  However, the purpose of section 727(a) "is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs."  In re Schifano, 378 F.3d at 66 (internal quotations omitted).  The plaintiff has the burden of proving an objection to discharge.  Fed. R. Bankr. P. 4005.

### A.     Count I: Section 727(a)(3)

In Count I, the Plaintiff alleges that the Defendant concealed, destroyed, or failed to keep records from which the Defendant's financial affairs can be determined, namely, how he incurred his unsecured debt and how he spent over $400,000 that he obtained in cash advances, convenience checks, and installment loans (collectively, the "Cash Advances").  Section 727(a)(3) provides that a court will not grant the debtor a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act

was justified under all of the circumstances of the case[.]" 11 U.S.C. § 727(a)(3). The standard under section 727(a)(3) is "reasonableness in the particular circumstances[,]" taking into account the debtor's education and sophistication. In re Schifano, 378 F.3d at 68 (citing Meridian Bank v. Alten, 958 F.2d 1226, 1230 (3rd Cir. 1992)). A plaintiff need not prove fraudulent intent, but only that the debtor acted unreasonably. See id. at 70. The plaintiff bears the initial burden of establishing that the defendant failed to keep and preserve his financial records and that this failure prevented the plaintiff from ascertaining the defendant's financial condition. Robertson v. Denis (In re Dennis), 330 F.3d 696, 703 (5th Cir. 2003). If the records are inadequate, the burden shifts to the defendant to show that the inadequacy is justified under all the circumstances. Id.; Alten, 958 F.2d at 1234. While a defendant may justify his acts, "a discharge may be granted only if the [defendant] presents an accurate and complete account of his financial affairs." In re Schifano, 378 F.3d at 68 (internal quotations omitted).

The Plaintiff first alleges that the Defendant destroyed certain credit card statements from 2004 through 2006 and argues that such act of destruction is grounds for denying discharge. The Court does not agree with her on this point. Although the Plaintiff established that the Defendant destroyed the records by shredding them, she failed to establish the second element of her burden. To prevail, she must have also shown that the Defendant's act of destroying the records prevented her from ascertaining his financial condition. See In re Dennis, 330 F.3d at 703. Here, the Plaintiff sought information about how the Defendant incurred his unsecured debt from the subject credit card statements, and she obtained such information by subpoenaing the statements from the credit card companies. Thus, the Defendant's act of discarding the records alone is insufficient under section 727(a)(3). Moreover, the Defendant justified his act with the testimony that he shredded the records to avoid identity theft problems. The Court notes, however, that the Defendant had an opportunity to provide the records to the Plaintiff by releasing the statements through the credit card companies but refused to do so.

Nonetheless, the Court finds that discharge should be denied under section 727(a)(3) for failure to keep and preserve adequate records of the Cash Advances. The Plaintiff established that: in 2004, the

Defendant obtained $134,384 in Cash Advances, including a $50,000 installment loan; in 2005, the Defendant obtained $196,298 in Cash Advances, including a $10,031 installment loan; and in 2006, he obtained $70,866 in Cash Advances. (Ex. 33.) The Defendant did not produce any records documenting the products or services he purchased with the Cash Advances. He also did not produce the installment loan documents. Thus, the Plaintiff has satisfied her burden. She established that the Defendant failed to keep and preserve adequate records and that his failure to do so has prevented the Court, the Plaintiff, and other interested parties from ascertaining how he expended over $400,000 in the Cash Advances. The Defendant, on his end, did not offer any justification for the lack of records. The Court finds that the Defendant's failure to keep any records of the Cash Advances was unreasonable, particularly in light of the fact that he customarily maintained appraisal fee receipts for his business of fifteen years. Moreover, the Court notes that the Defendant failed to otherwise present a complete account of the Cash Advances. The Defendant testified that he could not recall why he obtained the installment loans or how he spent all the Cash Advances. He gave vague testimony that he deposited the Cash Advances into his and his spouse's bank accounts and used them to pay his bills. Although he testified that he used certain convenience checks in 2004 to pay for his daughter's therapy bills, he did not indicate how much and how he expended the remainder of the Cash Advances. Thus, the Court denies discharge pursuant to section 727(a)(3). See In re Schifano, 378 F.3d at 68 ("Complete disclosure is in every case a condition precedent to the granting of discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies.") (citing Alten, 958 F.2d at 1230).

  Lastly, the Plaintiff raised an issue regarding the adequacy of the Defendant's record keeping for his appraisal business. The Plaintiff argues that the one-page profit and loss statement provided by the Defendant is inadequate for determining his business transactions. The Plaintiff argues that he should have kept ledgers listing receipts and expenses. However, the Defendant kept printouts of his appraisal fees, filed and kept his 2004 through 2006 tax returns, which list his business income and expenses,

maintained personal bank accounts into which he deposited business income, and kept bank statements and cancelled checks.  These documents were available to the Plaintiff.  Given these facts and considering that the Defendant is primarily a consumer debtor and sole proprietor, the Court finds that the Defendant's record keeping was reasonably adequate.  Nonetheless, the Court denies discharge under section 727(a)(3) for the reasons stated earlier.

### B. Count II: Section 727(a)(5)

In Count II, the Plaintiff alleges that the Defendant fails to explain the loss and deficiency of assets he obtained with the Cash Advances.  Section 727(a)(5) provides that discharge will be denied if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]"  11 U.S.C. § 727(a)(5).  "Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets."  First Federated Life Ins. Co. v. Martin (In re Martin), 698 F.2d 883, 886 (7th Cir. 1983); see  Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 620 (11th Cir. 1984) (providing that the defendant's failure to satisfactorily explain a $130,000 loan he obtained was grounds to deny discharge under section 727(a)(5)).  Once the objector "meets the initial burden by producing evidence establishing the basis for his objection, the burden shifts to the debtor to explain satisfactorily the loss."  In re Chalik, 748 F.2d at 619.  "Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory."  Id.

The Court finds that the Plaintiff has satisfied her burden under section 727(a)(5).  She established that the Defendant obtained over $400,000 in cash assets in the form of the Cash Advances, that the Defendant did not account for what goods and services he purchased with the Cash Advances, and that there is a large disparity between the Defendant's total assets ($69,845) and total liabilities ($565,475).  Thus, the burden shifted to the Defendant to explain the disparity and the near $500,000

deficiency of assets. The Defendant, however, offered vague testimony about his decreased income, increased health insurance and therapist fees for his daughter, and general payment of bills. He further failed to corroborate his testimony with documentary evidence. As such, the Court finds that the Defendant has failed to satisfactorily explain his deficiency of assets and denies discharge under section 727(a)(5).

### C. Counts III and IV: Section 727(a)(4)

In Counts III and IV, the Plaintiff alleges the Defendant made false oaths in his Statement of Financial Affairs and bankruptcy schedules. During the course of this adversary proceeding, the Plaintiff also alleged that the Defendant made false statements in his schedules regarding the mileage and value of the Toyota Spyder, an issue that both parties tried at trial. See Fed. R. Bankr. R. 7015(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."). Accordingly, the Court will address all three allegations.

"A debtor's Schedules and Statement of Financial Affairs are unsworn declarations made under penalty of perjury and are, according to federal law, the equivalent of a verification under oath." Smith v. Grondin (In re Grondin), 232 B.R. 274, 276 (B.A.P. 1st Cir. 1999). Under section 727(a)(4)(A), discharge will be denied if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" 11 U.S.C. § 727(a)(4)(A). To prevail under section 727(a)(4)(A), a plaintiff must show that the debtor (1) knowingly and fraudulently made a false oath and (2) the false oath related to a material fact in connection with the case. In re Schifano, 378 F.3d at 67. "[R]eckless indifference to the truth' . . . has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)." Boroff v. Tully (In re Tully), 818 F.2d 106, 112 (1st Cir. 1987). Matters are "material" if they are "pertinent to the discovery of assets, including the history of a bankrupt's financial transactions." In re Mascolo, 505 F.2d 274, 277 (1st Cir. 1974). The plaintiff bears the burden of proving that the defendant made a false oath knowingly and fraudulently, then "the burden falls upon the

bankrupt to come forward with evidence that he has not committed the offense charged." In re Tully, 818 F.2d at 110 (internal quotations omitted).

The Court begins its section 727(a)(4)(A) analysis with the Toyota Spyder issue. The Plaintiff argues that the Defendant knowingly and fraudulently made a false oath by understating the mileage and value of the Toyota Spyder in his bankruptcy schedules. This matter is "material" because it pertains to the discovery of the Defendant's assets. See In re Schifano, 378 F.3d at 67. The Court notes that, at the time of the trial, the Defendant's assets totaled approximately $21,250[2] and the Toyota Spyder was one of two significant assets owned by the Defendant.

With respect to the mileage on the Toyota Spyder, the Defendant listed 270,000 miles in his schedules. First, it is undisputed that such mileage is a false oath. The Plaintiff established and the Defendant admitted that the mileage was approximately 27,000 miles on the petition date. Second, although the Defendant testified that the mileage was a mistake, the Court does not find his testimony credible. When the Plaintiff first raised the mileage issue, the Defendant did not take remedial steps to correct the error and instead, inhibited the Plaintiff from verifying the mileage. Specifically, he refused to voluntarily permit an inspection of the vehicle, filed a motion to quash the subpoena issued by the Plaintiff to inspect the vehicle, and kept the vehicle in a dissembled state during a court-ordered inspection. Based on these facts, the Court concludes that the Defendant knowingly reported a false mileage. Third, the Defendant's failure to verify and report an accurate mileage in his schedules when the vehicle was in his possession, amounts to a reckless indifference to the truth equivalent to fraud. See In re Tully, 818 F.2d at 112. Thus, the Court finds that the Defendant knowingly and fraudulently made a false oath in his schedules with regard to the vehicle's mileage, which was relevant to the vehicle's value determination.

---

[2] According to his bankruptcy schedules, the Defendant's assets total $69,845. However, that value decreased after the petition date because his 2006 Mercedes convertible, worth $48,595, was repossessed.

With respect to the value of the Toyota Spyder, the Defendant listed $1,000 in his bankruptcy schedules. The Plaintiff argues that the Defendant made a false oath because the vehicle's value exceeded $1,000 on the petition date. The Defendant argues that the $1,000 value was not false because, although he knew that the face value of the vehicle was over $8,500 on the petition date, he had credible reasons for arriving at the scheduled value. He argues that on the petition date, the vehicle was not operating, dissembled, and needed approximately $6,500 in repairs, including heating, clutch, and transmission repairs. In view of the evidence before it, the Court finds that the elements for denying discharge under section 727(a)(4)(A) are present here. First, the Court concludes that the $1,000 value is false because (1) the vehicle had a low mileage of 27,000 miles on the petition date, which raises doubts about the scheduled value; (2) as of April 28, 2008, when the vehicle was approximately one year older from the petition date, it was still appraised at $7,500 despite the facts that it was not operating, dissembled, and missing various parts, including the front seats (see Ex. 31); and (3) the Defendant knew that the vehicle had a face value over $8,500 on the petition date and provided no testimonial or documentary evidence supporting his deductions. The $6,500 figure was primarily based on the Defendant's own estimates. The only evidence that he offered to validate his deductions were invoices from a Toyota dealership for various repairs completed on the vehicle in 2005. At most, these invoices reveal the cost for replacing the clutch and certain transmission repairs, which is less than his deductions. (Ex. 112.) Other repairs reflected in the invoices were not needed on the petition date, and thus, are not helpful to the Defendant's position. Second, by scheduling the $1,000 value on the vehicle when he knew that its face value exceeded $8,500 and by failing to reasonably verify his $7,500 in estimated deductions, the Court concludes that the Defendant acted knowingly and with, at least, reckless indifference to the truth equivalent to fraud. Accordingly, the Defendant's false oaths about the Toyota Spyder constitute grounds to deny discharge.

Next, the Plaintiff also raises an issue with the monthly $3,678 mortgage expense that the Defendant reported in his bankruptcy schedules. This matter is material, and it is undisputed that the

mortgage expense in the schedules is a false oath.  The Plaintiff established and the Defendant admitted that he did not pay any mortgage on the petition date because his residence was owned by the Catherine S. Marcelle Trust.  (See Ex. 27.)  The Defendant testified that he paid his spouse $1,000 monthly as rent, an arrangement that has been in place since 2002.  Based on the evidence before it, the Court finds that the Defendant made a false oath in his schedules and did so knowingly and with, at least, reckless indifference to the truth equivalent to fraud.

      Third, the Plaintiff alleges several other instances of false oath, which the Court rejects for the following reasons.  The Plaintiff argues that the Defendant knowingly and fraudulently made a false oath in his Statement of Financial Affairs by indicating that he did not make any transfers to an insider within the year preceding the petition date, when he had in fact transferred funds into his spouse's bank account during that time period.  However, the Statement of Financial Affairs, specifically paragraph 3(c), instructs debtors to: "List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders."  (Ex. 1 at 7.)  The Defendant did not make a false statement here because there is no evidence that the money transferred to his spouse was on account of a debt or that the spouse was a creditor.  The Plaintiff also argues that the nondisclosure of such transfers is grounds for discharge, but the Court is unconvinced by her argument.  Finally, the Plaintiff argues that the Defendant made a false oath when he understated his 2006 gross income.  In support, the Plaintiff established that the Defendant deposited at least $64,460 into his and his spouse's bank accounts from appraisal fees in 2006, but listed only $54,875 as his 2006 gross income in his Statement of Financial Affairs.  (See Ex. 43.)  However, the Defendant testified that the difference in the two income figures was due to an accounting method.  He explained that part of the 2006 funds were from deposits made in November and December of 2005.  The Plaintiff did not produce contradictory evidence, and the Defendant's figure is consistent with his 2006 tax return.  The Court concludes that the Defendant also did not make a false oath on this issue.

Lastly, the Plaintiff alleges that the Defendant made several false statements during the section 341 meeting held on June 12, 2007. As the Plaintiff did not plead those issues in her complaint and since the Court has already found sufficient grounds to deny discharge under section 727(a)(4)(A), the Court will not address those allegations. See In re Grondin, 232 B.R. at 277 ("According to the plain language of § 727(a)(4)(A), all that is required for a denial of discharge is a single 'false oath or account.'").

## CONCLUSION

For the reasons set out herein, the Court denies the Defendant a chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(3), (a)(4), and (a)(5). As such, the Court need not and will not rule on the Plaintiff's alternative request to dismiss the Defendant's bankruptcy case under 11 U.S.C. § 707(b)(3). This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate final judgment consistent with this opinion.

DATED this 30th day of October, 2008, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge